UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Antonnio C. Ayoka, | Case No. 19-cv-1692 (WMW/DTS) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Delta Family-Care Disability and Survivorship Plan, | |
| Defendant. | |

---

This matter is before the Court on cross motions for summary judgment. (Dkts. 23, 27.) Plaintiff Antonnio C. Ayoka alleges that Defendant Delta Family-Care Disability and Survivorship Plan (Delta Family-Care) acted in a manner that was arbitrary, capricious and an abuse of discretion when denying Ayoka's claims for short-term and long-term disability benefits. Delta Family-Care contends that its decision to discontinue short-term disability (STD) benefits for Ayoka was reasonable, supported by substantial evidence, and not an abuse of discretion. With respect to Ayoka's long-term disability (LTD) claim, Delta Family-Care argues that Ayoka failed to exhaust his administrative remedies and, therefore, this claim is not properly before the Court. For the reasons addressed below, the Court denies Ayoka's motion for summary judgment and grants Delta Family-Care's motion for summary judgment.

BACKGROUND

Ayoka is a resident of Minnesota, who at all times relevant to this action was an employee of Delta Air Lines, Inc. (Delta).  Delta Family-Care is an employee-benefit plan (Plan) governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*  Delta Family-Care is self-insured by Delta.  The Plan's administrator delegated the power to determine STD and LTD benefits eligibility to Sedgwick Claims Management Services (Sedgwick).  Delta Family-Care's relationship with Sedgwick is structured to remove potential conflicts of interest.  Sedgwick does not fund approved claims, and its compensation is unrelated to the outcome of its benefits determinations.

The relevant provisions of the Plan are as follows.  To establish an STD claim, the claimant must contact Sedgwick and initiate the claim within 31 days of the claimant's first absence:

> (i)     <u>Timing</u>: An Employee (or an authorized person acting on behalf of an Employee) must call the Claims Administrator no later than 31 days after the date of his first absence, unless evidence of a justifiable reason is provided, to initiate his claim and request certification for the illness or injury.  In no event shall a claim be accepted if submitted more than 182 days after the first absence due to illness or injury.

After a claimant initiates an STD claim, Sedgwick determines whether the claimant is "disabled" under the terms of the Plan.  "Disabled" under the Plan means that the claimant cannot engage in his or her "customary occupation as a result of a demonstrable injury or

disease," including mental or nervous disorders. If a claim for STD benefits is denied, Sedgwick must notify the claimant in writing. The claimant may appeal Sedgwick's initial determination by requesting a review of the claim "within 180 days after receipt of the notification of the adverse benefits determination." A claimant must exhaust all administrative remedies before seeking relief in federal court.

For an LTD claim, a claimant must submit his or her claim to Sedgwick within 213 days after the first date of absence due to illness or injury:

> (i) <u>Timing</u>: An Employee (or an authorized person acting on behalf of an Employee) must call the Claims Administrator no later than 31 days after the expiration of the Maximum Short-Term Disability Period, unless evidence of a justifiable reason is provided, to initiate his claim and request certification for the illness or injury. In no event shall a claim for Long-Term Disability Benefits be accepted if submitted more than 213 days after the first date of absence due to illness or injury.

Ayoka worked for Delta as a ramp agent. His first absence occurred on January 14, 2018. On January 23, 2018, Ayoka contacted Sedgwick to initiate an STD claim because of his anxiety and depression. On March 19, 2018, Sedgwick's medical examiner concluded that Ayoka's medical record, which contained only a report from Ayoka's personal care provider Dr. Kristine Hentges, was insufficient to find Ayoka disabled. To provide Ayoka time to send Sedgwick records from a mental health provider, the medical examiner granted Ayoka STD benefits through April 6, 2018.

After extending Ayoka's STD benefits to allow him time to submit additional documentation of his disability, Sedgwick arranged for an Independent Psychological

3

Examination (IPE) by Dr. John Pelletier, a licensed psychologist. Dr. Pelletier's IPE included a review of Ayoka's medical records from Dr. Hentges and Dr. Corine Hill, Ayoka's therapist, as well as interviews with both doctors. Dr. Pelletier also interviewed Ayoka over the phone. Ultimately, Dr. Pelletier concluded "within reasonable medical probability that the clinical evidence available does not support functional impairment due to [Ayoka's] psychological conditions."

In a letter dated May 24, 2018, based in part on Dr. Pelletier's report, Sedgwick notified Ayoka that his STD benefits were terminated as of May 19, 2018. Ayoka appealed Sedgwick's adverse determination. Ayoka submitted additional mental health records and a personal statement in his appeal. Sedgwick hired a psychiatrist to perform another IPE, Dr. Charlotte Murphy. Dr. Murphy reviewed all of the evidence and concluded that "the documentation does not demonstrate global impairment of psychiatric function that precludes [Ayoka] from working." On July 3, 2018, Sedgwick provided Dr. Murphy's report to Ayoka. In response, Ayoka submitted additional notes from Dr. Hentges and personal statements. Dr. Murphy reviewed the additional material and prepared an addendum to her report. After the second review of Ayoka's file, Dr. Murphy concluded "my determination is unchanged . . . the documentation does not demonstrate global impairment of psychiatric function that precludes [Ayoka] from working."

On August 27, 2018, Sedgwick provided Ayoka with a written notice of its final determination, which explained the information Sedgwick reviewed and how Sedgwick reached its adverse benefits determination. Sedgwick concluded that there was

4

"insufficient objective medical evidence or clinical findings demonstrating a disability precluding [Ayoka] from performing [his] customary occupation as a Ramp Agent." This appeal determination was final.

On October 1, 2018, after Sedgwick's final determination, Ayoka's attorneys sent a letter to Sedgwick claiming that Sedgwick failed to properly investigate Ayoka's health conditions, including his back pain. Ayoka's attorneys sent letters on January 2, 2019, and April 4, 2019. Each letter included allegations similar to those in the October 1, 2018 letter. Attached to the April 4, 2019 letter was an orthopedic medical record dated October 8, 2018, which reflects that Ayoka presented with low back pain but that his medical history did not include any indication of back pain before October 3, 2018.

Ayoka commenced this action on June 27, 2019, alleging that Delta Family-Care violated ERISA by denying Ayoka STD and LTD benefits. Although, the complaint is not organized into counts, the Court will treat Ayoka's claim for mental-health related STD benefits as Count I, Ayoka's claim for mental-health related LTD benefits as Count II, and Ayoka's claim for STD and LTD benefits based on his back pain as Count III.

The parties filed cross motions for summary judgment. Ayoka argues that Delta Family-Care's denial of Ayoka's claims for STD and LTD benefits was arbitrary, capricious and amounted to an abuse of discretion. Ayoka also seeks penalties based on Delta Family-Care's failure to timely provide Ayoka the administrative record pursuant to 29 U.S.C. § 1132(c)(1).

Delta Family-Care maintains that its decision to deny Ayoka STD benefits was reasonable, supported by substantial evidence and not an abuse of discretion. Delta Family-Care argues that it is entitled to summary judgment as to Ayoka's LTD benefits claim because Ayoka failed to submit a claim for LTD benefits. Finally, Delta Family-Care contends that Ayoka's request for penalties pursuant to 29 U.S.C. § 1132(c)(1) is not properly before the Court because Ayoka failed to plead this claim.

## ANALYSIS

Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a motion for summary judgment, the opposing party must cite with particularity those aspects of the record that support any assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1)(A); *accord Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

### A. Choice-of-Law Provision

The Plan contains a choice-of-law provision mandating the resolution of all legal disputes under the law of the Eleventh Circuit. Ayoka argues that because the law of the

6

Eighth Circuit is effectively the same as that of the Eleventh Circuit, the Court should apply Eighth Circuit law. Delta Family-Care does not address the choice-of-law provision.

The Plan's choice-of-law provision provides:

> 13.16 <u>Governing Law</u>: The Plan and all provisions thereof shall be governed by the laws of the State of Georgia, to the extent not preempted by ERISA. All legal disputes shall be resolved by reference to the law of the Eleventh Circuit regardless of where the case is filed.

"Where a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair." *Brake v. Hutchinson Tech. Inc. Grp. Disability Income Ins. Plan*, 774 F.3d 1193, 1197 (8th Cir. 2014) (quoting *Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1149 (11th Cir. 2001)).

The Plan, which contains a choice-of-law provision that is neither unreasonable nor fundamentally unfair, was written for a Georgia corporation located in the Eleventh Circuit. Accordingly, the Court applies Eleventh Circuit law.

### B. ERISA Standard of Review for a Benefits Determination

Congress enacted ERISA, 29 U.S.C. §§ 1001 *et seq.*, to promote the interests of employees and their beneficiaries in employee benefit plans, while also protecting contractually defined benefits. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989). District courts review a denial of benefits under an abuse-of-discretion standard when the plan administrator gives a delegate discretionary authority to make benefits decisions. *Firestone*, 489 U.S. at 115. Here, the Plan's administrator delegated

the authority to decide benefits eligibility to Sedgwick, and this Court reviews the denial of Ayoka's benefits claim for an abuse-of-discretion.[1]

When applying an abuse-of-discretion standard, courts will uphold the decision to deny benefits as long as the decision is made "rationally and in good faith." *Blank v. Bethlehem Steel Corp.*, 926 F.2d 1090, 1093 (11th Cir. 1991). A delegate's benefits decision is rational and made in good faith if "there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989); *see also Cooper v. Metro. Life Ins. Co.*, 862 F.3d 654, 660 (8th Cir. 2017) ("A decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision.").

### I. Ayoka's Short-Term Disability Claim (Count I)

In disputing the denial of his STD claim, Ayoka advances three arguments. Ayoka contends that Sedgwick abused its discretion by (1) ignoring evidence, (2) reversing a previous decision to grant benefits, and (3) failing to identify and request sufficient information to make a reasonable decision. The Court addresses each argument in turn.

---

[1] Because the structure of the Plan separates the benefits decision maker (Sedgwick) from the benefits payor (Delta Family-Care), there is no structural conflict of interest affecting Sedgwick's decision. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (holding that if there is a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion).

### A. Ignoring Evidence

Ayoka argues that Sedgwick ignored evidence submitted in support of Ayoka's claim and appeal, and instead relied only on the reports of Dr. Pelletier and Dr. Murphy whose conclusions did not logically flow from the underlying medical evidence. In doing so, Ayoka maintains, Sedgwick abused its discretion. Delta Family-Care contends that Sedgwick properly reviewed, considered and analyzed the evidence that Ayoka alleges Sedgwick ignored.

ERISA mandates that an employee benefit plan provide "adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). ERISA also requires that the plan "afford a reasonable opportunity . . . for a full and fair review." 29 U.S.C. § 1133(2). A delegated authority that makes a benefits determination, need not give special deference to the opinions of treating physicians or explain in detail every aspect of its decision. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). The only requirement is that the decision is made "rationally and in good faith." *Blank*, 926 F.2d at 1093.

The medical evidence in the administrative record shows that Dr. Murphy and Dr. Pelletier reviewed, cited and discussed the relevant evidence. Among many other documents, Dr. Murphy reviewed Dr. Hill's and Dr. Hentges's medical notes and treatment plans. Dr. Murphy spoke with Dr. Hentges about Ayoka's condition and determined that Ayoka's ailments do not prevent him from working. Dr. Pelletier reviewed medical records

9

from Dr. Hill and Dr. Hentges and conducted phone interviews with Ayoka, Dr. Hentges and Dr. Hill. After doing so, Dr. Pelletier concluded that the evidence does not support "functional impairment due to [Ayoka's] psychological conditions."

Ayoka maintains that Dr. Murphy and Dr. Pelletier ignored evidence. But the record reflects that Dr. Murphy and Dr. Pelletier considered the evidence provided to them. For example, Ayoka argues that Dr. Murphy and Dr. Pelletier ignored Ayoka's objective diagnostic testing. But both doctors reviewed the diagnostic testing and concluded that the tests were insufficient to prove that Ayoka cannot work. Ayoka also argues that Dr. Murphy and Dr. Pelletier ignored Ayoka's suicidal ideation. But Dr. Murphy and Dr. Pelletier reference Ayoka's suicidal ideation in their respective reports. That Sedgwick reached an adverse determination and denied Ayoka's claim, however, does not mean that it ignored medical evidence.[2] Indeed, the medical evidence supports denial.

Citing *Willcox v. Liberty Life Assurance Co. of Bos.*, 552 F.3d 693, 701 (8th Cir. 2002), Ayoka asserts that Sedgwick wrongfully accepted Dr. Murphy and Dr. Pelletier's reports without determining whether their conclusions follow logically from the underlying medical evidence. In *Willcox*, the Eighth Circuit held that it is an abuse of discretion when a plan's delegate denies benefits based on an independent reviewer's "incomplete, selective review of the medical evidence." 552 F.3d at 702. But the facts in this case are distinguishable from *Willcox*. The independent reviewer in *Willcox* concluded that there

---

[2] Ayoka also attempted to use his own personal statements as evidence of his disability. But personal statements are not medical evidence.

was "no objective evidence" of the claimant's injury. *Id.* at 701. But the record contained objective evidence of an injury. *Id.* And the independent reviewer made several other factually inaccurate findings as to the claimant's physical condition that contradicted the reports of other medical professionals that examined the claimant. *Id.* at 697. Based on those facts, the *Willcox* court found that the independent reviewer abused its discretion by relying on reports that "mischaracterized the medical evidence and ignored key findings." *Id.* at 703.

Here, both Dr. Murphy and Dr. Pelletier provided an accurate description of the medical evidence, Dr. Hill agreed with Dr. Pelletier's conclusion, and Dr. Hentges did not rebut Dr. Pelletier's conclusion. Thus, it was reasonable for Sedgwick to agree with the conclusions of three mental health medical professionals (Dr. Pelletier, Dr. Murphy and Dr. Hill) and the non-rebuttal of a primary care provider (Dr. Hentges). Ayoka has provided no medical evidence that contradicts Sedgwick's adverse benefits determination.

Accordingly, Sedgwick's decision to deny Ayoka STD benefits was rational, made in good faith and not an abuse of discretion. *See Blank*, 926 F.2d at 1093.

### B. Estoppel

Ayoka argues that Sedgwick abused its discretion by granting and then later revoking STD benefits without adequate evidentiary support for doing so. Delta Family-Care counters that Sedgwick's preliminary approval does not estop it from later denying benefits. Based on these arguments, the Court construes the parties' dispute as whether the prior approval of Ayoka's Family Medical Leave Act (FMLA) claim and the temporary

11

award of STD benefits estops Sedgwick, after the discovery of more evidence, from discontinuing Ayoka's benefits.

A plan may grant disability benefits and, after the discovery of more evidence, revoke those benefits, *see Kecso v. Meredith Corp.*, 480 F.3d 849, 854 (8th Cir. 2007), as long as the revocation of benefits is made "rationally and in good faith." *Blank*, 926 F.2d at 1093.

The administrative record reflects that Sedgwick initially granted Ayoka's claim for FMLA leave and STD benefits. According to the record, the STD benefits were temporally granted to allow Ayoka additional time to send Sedgwick medical information. After the initial grant of STD benefits, Sedgwick received the independent reports of Dr. Murphy and Dr. Pelletier, both of which concluded that the medical evidence did not support a finding that Ayoka was disabled. Sedgwick also received evidence that Dr. Hill concurred with Dr. Pelletier's assessment. Accordingly, Sedgwick's decision to terminate Ayoka's STD benefits was made "rationally and in good faith." *Id.*

Citing *Norris v. Citibank, N.A. Disability Plan (501)*, 308 F.3d 880 (8th Cir. 2002), Ayoka argues that Sedgwick wrongfully revoked his STD benefits. In *Norris*, the court held that a plan abuses its discretion when it relies on evidence that conflicts with the majority of the record and fails to explain contrary evidence. 308 F.3d at 885. The plan administrator in *Norris* initially found that the claimant was unable to work. *Id.* Subsequently, with no new medical evidence, the plan administrator concluded that the claimant was able to work. *Id.* The plan administrator provided no reasonable explanation

12

for the contradictory conclusions. *Id.* Here, citing two letters he received from Sedgwick approving his STD benefits from January 14, 2018, through May 4, 2018, Ayoka argues that Sedgwick found him disabled under the terms of the plan.[3] But these letters do not address the sufficiency of the medical information, they merely state that Ayoka has been approved for STD benefits. And the record suggests that Sedgwick only *conditionally* approved Ayoka's STD benefits until Sedgwick could gather more medical records. Unlike the facts in *Norris*, Sedgwick's decision to terminate Ayoka's STD benefits was based on new medical evidence, and Sedgwick's determination was both reasonable and based on substantial evidence. Accordingly, the Court denies Ayoka's motion for summary judgment as to his claim for estoppel.

### C. Failure to Identify and Request Additional Information

Ayoka also argues that Sedgwick failed to identify and request additional information needed to make a reasonable benefits decision for Ayoka. But Delta Family-Care contends that Sedgwick repeatedly attempted to gather additional information from Ayoka, who failed to provide it.

ERISA requires a plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review." 29 U.S.C. § 1133(2). The core requirements of a "full and fair review" include "knowing what evidence the decision-

---

[3]  Ayoka also argues that a letter approving his FMLA time estops Sedgwick from denying him STD claims. This argument is unavailing because FMLA leave is determined under a different statute, 29 U.S.C. § 2611(2), and has no relationship to Ayoka's STD benefits claim under the terms of the Plan.

maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Brown v. Ret. Comm. of Briggs & Stratton Ret. Plan*, 797 F.2d 521, 534 (7th Cir. 1986).

The record shows that Sedgwick provided Ayoka the opportunity to submit the additional medical evidence. Indeed, Sedgwick called, emailed and sent letters to Ayoka requesting additional medical records. And Sedgwick granted Ayoka STD benefits while waiting for additional medical records from Ayoka and his medical providers. Ayoka subsequently submitted information, and Sedgwick hired Dr. Pelletier to review the record. Following its review of Dr. Pelletier's report, Sedgwick sent Ayoka a letter explaining the decision to terminate his STD benefits. The letter specifically identifies the type of information Ayoka needed to submit to better substantiate his claim. And throughout the appeals process, Sedgwick provided Ayoka with opportunities to respond to Dr. Pelletier's and Dr. Murphy's reports. Although Ayoka responded each time with medical records and personal statements, Sedgwick deemed Ayoka's medical evidence insufficient to overturn the adverse benefits determination. The record establishes that Sedgwick provided Ayoka with a "reasonable opportunity . . . for a full and fair review." 29 U.S.C. § 1133(2).

Accordingly, Ayoka's motion for summary judgment as to his STD benefits claim, (Count I), is denied, and Delta Family-Care's motion for summary judgment as to Ayoka's STD benefits claim, (Count I), is granted.

## II. Ayoka's Long-Term Disability Claim (Count II)

Delta Family-Care contends that Ayoka's claim for long-term disability based on his mental health is barred by the terms of the Plan because Ayoka failed to submit a timely LTD benefits claim. Ayoka contests this determination, arguing that he requested permission to apply for LTD benefits via a letter dated October 1, 2018.

The terms of the Plan prohibit the initiation of an LTD benefits claim more than "213 days after the first date of absence." Because Ayoka's first absence occurred on January 14, 2018, any LTD request made after August 15, 2018, is time-barred by the terms of the Plan.

The record does not establish that Ayoka initiated an LTD benefits claim on or before August 16, 2018.[4] Moreover, under the terms of the Plan, Ayoka cannot qualify for LTD benefits until after he has exhausted his STD benefits. Because Delta Family-Care reasonably terminated Ayoka's STD benefits, Ayoka is not eligible for LTD benefits.[5]

---

[4] Ayoka argues that some of Sedgwick's internal notes indicate Sedgwick was on notice as to Ayoka's LTD benefits claim before the deadline. But Sedgwick's internal notes do not show that Ayoka either applied for or attempted to apply for LTD benefits. The notes merely indicate that Ayoka had remaining STD coverage and that Sedgwick would wait to determine whether Ayoka was eligible for LTD benefits. That Sedgwick had notice that Ayoka *might* be eligible for LTD benefits is not a submission of a claim for LTD benefits. Because Ayoka never submitted a claim for LTD benefits, this argument is unavailing.

[5] Ayoka's January 2, 2019 and April 4, 2019 letters seeking LTD benefits also are time-barred by the terms of the Plan.

15

For these reasons, the Court denies Ayoka's motion for summary judgment as to his LTD benefits claim, (Count II), and grants Delta Family-Care's motion for summary judgment as to Ayoka's LTD benefits claim, (Count II).

### III. Ayoka's Alleged Back Pain (Count III)

Ayoka argues that Sedgwick failed to address Ayoka's back pain when considering Ayoka's LTD and STD benefits claims.

Under the terms of the Plan, all STD benefits claims must be brought no later than "182 days after the first date of absence due to illness or injury." And the terms of the Plan prohibit the initiation of an LTD benefits claim more than "213 days after the first date of absence." Because Ayoka's first absence occurred on January 14, 2018, any STD request made after July 15, 2018, is time-barred by the terms of the Plan. And any LTD request made after August 15, 2018, is time-barred by the terms of the Plan.

Ayoka's personal statements submitted to Delta Family-Care when appealing the denial of his STD claim, allege that his depression and anxiety led to "joint pain." But Ayoka did not seek benefits based on alleged back pain prior to Sedgwick's final determination. Ayoka first provided notice of his back pain in the April 4, 2019 letter to Sedgwick, to which Ayoka attached an orthopedic medical record dated October 8, 2018. That orthopedic medical record reflects that Ayoka presented with low back pain, but that his medical history does not document Ayoka complaining of back pain prior to October 3, 2018. Ayoka's claim arising from alleged back pain is time-barred because he failed to

mention it prior to the August 16, 2018 LTD benefits notice deadline.[6] Nor is there any medical evidence of Ayoka suffering from back pain prior to October 3, 2018. For these reasons, Ayoka's argument as to Sedgwick's failure to address his back pain is unavailing. *See Rittenhouse v. UnitedHealth Grp. Long Term Disability Ins. Plan*, 476 F.3d 626, 631 (8th Cir. 2007) (holding that an ERISA plan "was justified in closing the administrative record" after conducting a full and fair review, when there is insufficient medical evidence supporting an award of benefits).

Accordingly, the Court grants Delta Family-Care's motion for summary judgment as to Ayoka's STD and LTD benefits claims arising from alleged back pain, (Count III), and denies Ayoka's motion for summary judgment as to this claim, (Count III).[7]

### IV. Penalties for Failure to Provide the Administrative Record

Because Delta Family-Care failed to provide him with the administrative record in a timely manner pursuant to 29 U.S.C. § 1132(c)(1), Ayoka contends, he is entitled to the statutory penalty. Delta Family-Care disagrees, arguing that because Ayoka did not plead a penalties claim, he cannot recover penalties.

---

[6] Because Ayoka failed to meet the longer LTD benefits claim 213-day standard, he also fails to meet the shorter STD benefits claim standard.

[7] Ayoka contends that he should be awarded attorneys' fees, costs and prejudgment interest if he succeeds on his claims. Because the Court denies Ayoka's motion for summary judgment as to each of his claims, however, the Court need not address Ayoka's argument for attorneys' fees, costs and prejudgment interest.

A plan administrator or its delegate, after receiving a written request, must furnish certain reports to plan participants. *See* 29 U.S.C. § 1024(b)(4). If the plan administrator fails to provide the requested information within 30 days of the initial request, a district court, in its discretion, may award "up to $100 a day" in penalties for each day thereafter, in which the plan fails to provide the requested documents. 29 U.S.C. § 1132(c)(1).

Pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). Although the pleading requirements under Rule 8 are permissive, the essential function of pleading is to give the defendant "fair notice" of what the claim is and the grounds on which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant is not required to "intuit additional theories of liability" that are not apparent in the complaint. *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 993 (8th Cir. 2018). A plaintiff cannot seek leave to amend the complaint via argument in the plaintiff's summary judgment memoranda. *See N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004).

Ayoka's complaint fails to state any facts or relevant legal standards in support of his claim for penalties under 29 U.S.C. § 1132(c)(1). No aspect of any allegation in the complaint even purports to be a "short and plain statement" of a penalties claim. Fed. R. Civ. P. 8(a)(1). The complaint does not allege that Ayoka requested the administrative record from Delta Family-Care. Nor does the complaint allege that Delta Family-Care failed to provide the administrative record in a timely manner. A plaintiff cannot recover on unpled claims.

For these reasons, the Court denies Ayoka's motion for summary judgment as to penalties under 29 U.S.C. § 1132(c)(1).

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff Antonnio C. Ayoka's motion for summary judgment, (Dkt. 23), is **DENIED**.

2. Defendant Delta Family-Care Disability and Survivorship Plan's motion for summary judgment, (Dkt. 27), is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: September 16, 2021
                                                    s/Wilhelmina M. Wright
                                                    Wilhelmina M. Wright
                                                    United States District Judge